UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARCUS JAMAR WADE,

    Plaintiff,

    v.                                Case No. 18-cv-110-pp

MILWAUKEE COUNTY JAIL,
CORRECTIONAL OFFICER TURNER,
CORRECTIONAL OFFICER PAYNE,
CORRECTIONAL OFFICER ERICSON,
CORRECTIONAL OFFICER DRAGOO,
CORRECTIONAL OFFICER HINTZ,
CORRECTIONAL OFFICER SANTANA,
CORRECTIONAL OFFICER SPIDELL,
CORRECTIONAL OFFICER ROMO,
CORRECTIONAL OFFICER DANTZLER,
CORRECTIONAL OFFICER CARROLL,
NURSE JACKIE, and
NURSE PRACTITIONER BRANDON,

    Defendants.

---

**ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2) AND SCREENING THE PLAINTIFF'S COMPLAINT (DKT. NO. 1)**

---

      Plaintiff Marcus Jamar Wade, a Wisconsin inmate representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants were deliberately indifferent to his serious medical needs while he was at the Milwaukee County Jail. Dkt. No. 1. He also filed a motion to proceed without prepayment of the filing fee. Dkt. No. 2.

This case is assigned to Magistrate Judge Nancy Joseph. Although the plaintiff has consented to Judge Joseph hearing and deciding the case, the defendants have not yet had the opportunity to decide whether to consent, because the court had not screened the complaint and decided whether it should be served on the defendants. Because *both* parties have not yet consented to the magistrate judge hearing the case, the district court judge will screen the complaint.

I.  **Motion for Leave to Proceed without Prepayment of the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act gives courts discretion to allow prisoners to proceed with their lawsuits without prepaying the $350 filing fee, if they comply with certain requirements. 28 U.S.C. §1915. One of those requirements is that the prisoner pay an initial partial filing fee. 28 U.S.C. §1915(b).

On January 25, 2018, Judge Joseph ordered the plaintiff to pay an initial partial filing fee of $29.60. Dkt. No. 5. The court received $26.90 on February 8, 2018, plus another $2.70 on February 15, 2018—those two payments total the full amount of the initial partial filing fee ordered by the court. Because the plaintiff has paid the partial filing fee, the court will grant his motion to proceed without prepaying the filing fee, dkt. no. 2, and will require him to pay the remainder of the $350 filing fee over time as explained at the end of this decision.

## II.     Screening of the Complaint (Dkt. No. 1)

Federal law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed under 42 U.S.C. §1983, a plaintiff must allege that: 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) the person who deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A. Allegations in the Complaint

The plaintiff has sued the following employees of Milwaukee County Jail: correctional officers Turner, Payne, Ericson, Dragoo, Hintz, Santana, Spidell, Romo, Dantzler, and Carroll; Nurse Jackie; and Nurse Practitioner Brandon. Dkt. No. 1 at 1. The plaintiff alleges that on October 20, 2017, he broke his right hand during a physical altercation that happened during breakfast. Id. at 3. The plaintiff generally asserts that between October 20 and 30, 2017, all the defendants (and two other people whom he did not name as defendants) ignored his complaints about his hand, which was swollen, in pain and discolored. Id. at 6.

Specifically, the plaintiff states he was removed from the housing unit (perhaps 5D—it is hard to read), and that Nurse Jackie checked him for injuries. Id. at 3. The plaintiff asserts that he told Jackie that his hand was swollen, and in pain; Jackie asked him whether he could move all five of his fingers. Id. The plaintiff responded by moving all five fingers. Id. He says that Jackie told him that it was "just a sprain," and he was escorted to another unit. Id.

When he arrived at unit 4D, the plaintiff alleges that he informed Turner that his hand was hot, discolored and in a lot more pain. Id. at 3-4. The plaintiff alleges, "Turner stated that [the plaintiff] had already been checked out by the nurse and there was nothing he could do for [the plaintiff]." Id. at 4-5.

4

At some point that same day, the plaintiff got Ericson's attention, showed him "[the plaintiff's] hand and explained to [Ericson] what had happened." Id. at 5. He asserts that Ericson responded by telling him that "there was nothing that he could do for [the plaintiff]." Id.

Sometime after the 2:00 p.m. shift change on that same day, the plaintiff alleges he spoke with Dragoo and told Dragoo that he needed his hand assessed. Id. The plaintiff says that Dragoo "went about doing his job as if [the plaintiff] had said nothing." Id.

After the 10:00 p.m. shift change on the same day, the plaintiff states that he spoke with Payne and "told him of [the] situation." Id. He asserts that Payne stated that he would talk with a nurse, see what the nurse said and let the plaintiff know. Id. The plaintiff says, however, that he heard nothing more from Payne that night. Id.

Five days later—on October 25, 2017—the plaintiff told Brandon about the "pain, swelling, and discoloration to [his] hand." Id. The plaintiff asserts that instead of "calling a medical emergency," Brandon said "he'd put in an order for x-rays." Id.

On October 28, 2017, Carroll (a team leader) was making the rounds in unit 4D, and the plaintiff told Carroll "about [his] situation" and how he was still waiting to be seen for x-rays. Id. He says that Carroll stated that he would put in a call for x-rays. Id.

5

On October 30, 2017, the plaintiff asserts that he was released from unit 4D, and on that same day, taken for x-rays of his hand. Id. at 5-6.

The plaintiff relates that on November 2, 2017, he was called to the clinic and met with a nurse practitioner, who stated he had been summoned for x-rays of his hand. Id. at 6. He says that after he informed the nurse practitioner that the x-rays had already been taken, she was surprised. Id. The nurse practitioner asked another nurse to try to find the results; that nurse returned and gave the nurse practitioner a sheet of paper. Id. The nurse practitioner read the results "and apologized and told [the plaintiff] that [he] had broken his hand." Id.

The plaintiff seeks monetary damages.

B.  The Court's Analysis

The plaintiff does not say whether he was in the Milwaukee County Jail as a pretrial detainee on a new case, or whether he had been returned there on a writ from a prison where he was serving a sentence as a convicted inmate.[1] If he was a pretrial detainee, his "constitutional rights . . . [were] derived from the Due Process Clause of the Fourteenth Amendment . . . ." Smith v. Dart, 803 F.3d 204, 309 (7th Cir. 2015) (citations omitted). If he was a convicted inmate,

---

[1] It appears to the court that the plaintiff was in Milwaukee County as a pretrial detainee. The Wisconsin Circuit Court Access Program shows that on August 29, 2017, the plaintiff was charged in State of Wis. v. Marcus Jamar Wade, 2017CF003981 (Milw. Cty.). https://wcca/wicourts.gov, last checked August 30, 2018. The docket for the case shows that the plaintiff was in custody between his preliminary hearing date of September 7, 2017 and a status conference on November 2, 2017. Id.

the Eighth Amendment applied. Id. (citations omitted). See also, Frake v. City of Chi., 210 F.3d 779, 781 (7th Cir. 2000). Either way, however, the plaintiff had a right to be "protected from the 'deliberate indifference' of officials." Frake, 210 F.3d at 271 (citations omitted).

To state a claim that officials were deliberately indifferent to his medical needs, a plaintiff must show two things: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (citing Johnson v. Snyder, 444 F.3d 579, 584 (7th Cir. 2006)). In determining whether the medical condition the plaintiff suffered was objectively serious, the court looks to see if the plaintiff has either a diagnosed condition requiring treatment or a condition "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." See Zentmyer v. Kendall Cty., Ill., 220 F.3d 805, 810 (7th Cir. 2000) (internal quotation and citation omitted); see also Walker v. Peters, 233 F.3d 494, 498 (7th Cir. 2000). Regarding the second element concerning whether a prison official acted with deliberate indifference, the court considers whether the official actually knew of and disregarded the substantial risk of harm to the plaintiff. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As to the first element, the plaintiff has alleged that he was diagnosed with a broken hand. That is an objectively serious injury. The question before the court is whether the plaintiff has made sufficient allegations that each of the defendants he has sued knew of the risk of that injury, but disregarded it.

7

1. *Claims against Medical Staff Defendants*

The plaintiff has sued two medical professionals—Nurse Jackie and Nurse Practitioner Brandon. A court may infer deliberate indifference on the part of a medical professional when "the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996).

The plaintiff has alleged that Jackie checked him for injuries on the day he was hurt. He told her that his hand was swollen and painful. She asked him whether he could move all five fingers on the hand. When he was able to do so, Jackie told him that he just had a sprain. The plaintiff does not allege that Jackie refused to see him, or refused to evaluate him. Rather, he implies that Jackie misdiagnosed him; she concluded that his hand was sprained, but he found out about a week later that his hand was broken. In other words, the plaintiff alleges that Jackie committed something like malpractice. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. See also Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001) ("Neither negligence nor even gross negligence is a sufficient basis for liability" for a §1983 claim.) The plaintiff has not alleged that Jackie misdiagnosed him on purpose, or that she deliberately told him his hand was sprained when she knew it was broken. At best, the

plaintiff has alleged malpractice or negligence, and the court will not allow the plaintiff to proceed against Nurse Jackie.

Five days after the plaintiff was injured, he saw Nurse Practitioner Brandon. He told Brandon about the pain, swelling and discoloration in his hand. The plaintiff implies that Brandon should have responded by calling a medical emergency. Instead, Brandon said he would "put in an order for x-rays." Dkt. No. 1 at 5. As of three days later, the plaintiff had not been x-rayed.

At this early stage, there is no evidence regarding whether Brandon did what he said he would do, and requested the x-rays. The allegations in the complaint indicate only that Brandon said he would ask for the x-rays, but that three days passed and no x-rays had been taken. During those three days, the plaintiff continued to suffer from a broken hand. "[D]eliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim." Smith v. Knox Cty. Jail, 666 F.3d 1037, 1040 (7th Cir. 2012). "'[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment.'" Id. (quoting McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)). "Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." Id. At this early stage, the court finds that the plaintiff has stated sufficient facts to allow him to pursue a deliberate indifference claim against Nurse Practitioner Brandon.

9

### 2. *Claims against Correctional Officers*

As for correctional officers, the standard for deliberate indifference towards a prisoner's medical needs is different, because the officers are not responsible for administering medical care. Rather, they are "entitled to defer to the judgment of jail health professionals so long as [they] do not ignore [the prisoner]." Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010).

The plaintiff says that after he arrived at unit 4D, he told Turner his hand was hot and in a lot more pain. Turner responded that the plaintiff had already seen a nurse, and that there was nothing that Turner could do for him. Turner, as non-medical personnel, was entitled to rely on the judgment of the nurse. The court will not allow the plaintiff to proceed on a deliberate indifference claim against Turner.

The plaintiff does not say what time he saw Ericson—how long after he was injured. But unlike Turner, there is no indication that Ericson knew that the plaintiff had seen a nurse. Yet, when the plaintiff showed Ericson his hand and explained what had happened, Ericson said there was nothing he could do. While it is a close call, the court concludes that the plaintiff has alleged sufficient facts to allow him to proceed on a deliberate indifference claim against Ericson.

The same is true for Dragoo and Payne. The plaintiff spoke to Dragoo sometime after the 2:00 p.m. shift change, hours after he was injured. Dragoo, according to the plaintiff, completely ignored him. The plaintiff saw Payne after

10

the 10:00 p.m. shift change, by which time he'd been in pain all day. Payne said he would talk to a nurse and let the plaintiff know; there is no indication that Payne followed through, because he never spoke to the plaintiff again that day.

The plaintiff spoke to Carroll three days later, on October 28, telling Carroll about the fact that Brandon had said he'd put in for x-rays, but that the plaintiff hadn't been x-rayed. Carroll said he put in a call. Two days later, on October 30, the plaintiff was released from 4D and taken for x-rays. As with Brandon, it is not clear whether Carroll did what he said he would do, but the plaintiff suffered another two-day delay with a broken hand after talking to Carroll. That is enough, at this early stage, to state a claim against Carroll.

Finally, the plaintiff alleges that he complained to Hintz, Santana, Spidell, Romo and Dantzler about swelling, pain and discoloration in the hand, but that they did nothing. While those allegations are less specific, the court will allow the plaintiff to proceed against those defendants.

        3.     *Claim against Milwaukee County Jail*

Finally, the plaintiff sued the Milwaukee County Jail. Section 1983 prohibits "persons" acting under color of state law from violating another person's civil rights. A jail is not a person. It is not a separate legal entity that can be sued. See Powell v. Cook Cty. Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993). The Milwaukee County Jail is an arm of Milwaukee County. Because the

11

Milwaukee County Jail is not a separate entity subject to suit under §1983, the court will dismiss it as a defendant.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES the** Milwaukee County Jail, Correctional Officer Turner and Nurse Jackie as defendants.

Under an informal service agreement between Milwaukee County and this court, the court **ORDERS** the clerk's office to electronically send copies of the plaintiff's complaint and this order to Milwaukee County for service on defendants Correctional Officers Payne, Ericson, Dragoo, Hintz, Santana, Spidell, Romo, Dantzler, and Carroll and Nurse Practitioner Brandon.

Under an informal service agreement between Milwaukee County and this court, the court **ORDERS** defendants Correctional Officers Payne, Ericson, Dragoo, Hintz, Santana, Spidell, Romo, Dantzler, and Carroll and Nurse Practitioner Brandon to file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $320.40 balance of the filing fee by collecting monthly payments from the trust account in an amount equal to 20% of the preceding month's income credited to the account, and forwarding payments to the clerk of court each time the amount in the account exceeds

$10, in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Oneida County Jail, where the plaintiff is confined.

The court **ORDERS** that the clerk's office shall **RETURN** this case to Judge Joseph for further proceedings.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** the plaintiff to mail all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss

the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 31st day of August, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**